IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

MICHAEL A. SCOTT, SR.,
*Administrator of the Estate of*
*Michael A. Scott, Jr.*,

        Plaintiff,

v.             CIVIL ACTION NO. 2:22-cv-00419

ZACHARY WINTERS, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Defendants', City of Dunbar and Adam Mason, Motion to Dismiss* (Document 13), *Defendants', City of Dunbar and Adam Mason, Memorandum in Support of Their Motion to Dismiss* (Document 14), the *Plaintiff's Response to Defendants', City of Dunbar and Adam Mason, Motions to Dismiss* (Document 15), and *Defendants', City of Dunbar and Adam Mason, Reply to Plaintiff's Response* (Document 18), as well as the Plaintiff's *Complaint* (Document 1).

**FACTUAL ALLEGATIONS[1]**

The Plaintiff, Michael A Scott, Sr., acting as Administrator of the Estate of Michael A. Scott, Jr. (collectively, Mr. Scott), initiated this action by filing the complaint on September 29, 2022. The Defendants are the City of Dunbar and two police officers with the Dunbar Police Department, Zachary Winters and Adam Mason.

---

[1] For purposes of this motion to dismiss, the Court will treat the factual allegations in the complaint as true.

On July 22, 2022, at approximately 12:30 a.m., Officer Winters made contact with the decedent, Michael Scott, Jr. Officer Winters began yelling at and threatening Mr. Scott. Officer Mason arrived and searched unsuccessfully for grounds to arrest or detain Mr. Scott. He did not find outstanding charges or warrants at that point, and the officers continued their patrol. Officer Winters and Officer Mason subsequently learned of "an apparently outstanding warrant for a misdemeanor trespassing charge from the City of Dunbar and had decided to arrest Mr. Scott, after midnight, on this warrant." (Compl. at ¶ 12.)

Officer Winters again encountered Mr. Scott at 12:47 a.m. Bodycam footage shows that Officer Winters immediately told Mr. Scott to turn and cuffed his hands behind his back. Officer Winters then began searching Mr. Scott's pockets. Mr. Scott did not resist or attempt to flee. Officer Winters "began to yell and scream at Michael Scott, Jr., telling him not to pull away, despite the video showing that Michael Scott, Jr., was not attempting to flee or run away from Defendant Winters." (*Id.* at ¶ 14.) At approximately 12:48 a.m., Officer Mason arrived on the scene. Both officers' body cam footage shows that "with no provocation nor any valid justification, Defendant Winters picked the cuffed and restrained Michael Scott, Jr., up from behind and lifted his body off of the ground, slamming Michael Scott Jr.'s head onto the pavement of the street and causing catastrophic injuries to Michael Scott Jr.'s skull and head," which Officer Winters subsequently described as a "suplex." (*Id.* at ¶ 16.)

Officer Mason contacted Metro 911 at 12:51 a.m., and requested that they send a medic to the Dunbar Police Department to evaluate Michael Scott, Jr. Officers Winters and. Mason attempted to clean blood from Mr. Scott's face, head, and ear, then transported him to the Dunbar Police Department. Video footage from the police department holding area, as well as the

officers' bodycam footage, shows Mr. Scott bleeding from his ear canal. Paramedics arrived at approximately 12:56 a.m. They did not see the scene of Mr. Scott's injuries with blood on the ground, and Officer Winters claimed that Mr. Scott fell when attempting to run from him and that his ear was bleeding because he tore an earring on the pavement in his "fall." Mr. Scott initially told paramedics he wished to go to the hospital. Officers Winters and Mason then had a conversation outside the holding area, and Officer Winters turned off his bodycam. They returned to the holding area and stared at Mr. Scott, and the paramedics then noted that he declined transport to the hospital. The paramedics left. The Kanawha County Emergency Ambulance Authority Run Report describes the chief complaint as a bleeding ear lobe and rib pain and recounts the officers' statement that Mr. Scott "ran and cut his ear on his earring after striking the pavement." (*Id.* at ¶ 23.) The report indicates that Mr. Scott was assessed at 1:06 a.m., though the footage of the interaction does not show a full assessment. Records show that the call was cleared at 1:19 a.m.

Officers Winters and Mason locked Mr. Scott in a holding cell for approximately another hour. A city clerk then arrived and read charges to Mr. Scott and stated that he was being committed to jail at South Central Regional Jail (SCRJ). Officer Winters transported Mr. Scott to the jail at 2:16 a.m. He stopped for gas on the way, and Mr. Scott began moaning and complaining of pressure in his head. Mr. Scott begged for help and asked to be taken to the hospital. He was struggling to keep his head up. Officer Winters refused, and they arrived at the jail at approximately 2:30 a.m. Mr. Scott had trouble staying upright and had to lean on a wall to support himself as he tried to walk into the jail. Video footage from the SCRJ booking area shows that they arrived at approximately 2:38 a.m. Mr. Scott's condition was rapidly deteriorating, and

3

he could barely walk. He "required assistance from two correctional officers to stand while he was processed through the facility's body scanner." (*Id.* at ¶ 37.) He laid his head on the counter and was moaning in pain. Officer Winters claimed that he was faking his condition. SCRJ guards and nurses indicated that they did not believe Mr. Scott could be cleared medically to enter the jail. A medical staff member asked about the blood coming from Mr. Scott's ear canal, and Officer Winters claimed Mr. Scott had fallen on his earring. At one point, Officer Winters suggested that Mr. Scott could be having a drug overdose, and jail staff administered Narcan.

Officer Winters refused to take Mr. Scott to the hospital, as suggested by SCRJ staff, and told jail staff he had a jail commitment and intended to leave him at the jail. Officer Winters communicated with Officer Mason regarding his dispute with jail staff about taking custody of Mr. Scott. Officer Mason and a lieutenant at SCRJ had a phone call in which Officer Mason stated that he had confirmed with the Dunbar City Attorney and the Dunbar Municipal Judge that Dunbar police officers could drop a person at the jail once they had a jail commitment and were not responsible for taking them for further medical assistance. While at the jail, Officer Winters told Mr. Scott to "stop putting on a show," and told jail and medical staff that Mr. Scott had "tried to run from me so he got suplexed." (*Id.* at ¶¶ 47–49.) "At 2:56 a.m., as Michael Scott, Jr.'s condition became more and more severe, Defendant Winters spoke to Defendant Mason on a phone call. At that time, Defendant Mason asked Defendant Winders what he was doing. Defendant Winters replied, 'I'm watching Michael Scott, Jr. basically die right here.'" (*Id.* at ¶ 52.)

Jail staff contacted the Charleston Fire Department (CFD) at 2:46 a.m., and CFD personnel arrived at the jail at 3:01 a.m. The CFD Run Report notes that jail staff reported that they believed

4

Mr. Scott had been beaten by the police. After they arrived, Mr. Scott was carried out of the bathroom, where guards had been helping change him into a jumpsuit. He appeared unresponsive. SCRJ staff informed the CFD that Mr. Scott appeared to have a head injury and his mental status had deteriorated during the time he was at the jail. CFD transported Mr. Scott to Charleston Area Medical Center (CAMC) at 3:27 a.m.

At 4:17 a.m. on July 22, 2022, the Charge Nurse reached out to Officer Winters to inquire as to the cause of his injuries to assist in his treatment, as Mr. Scott was unable to communicate. Officer Winters "told the Nurse that Mr. Scott had been 'picked up and placed on the ground,'" that he "had a laceration due to his earring being ripped out," and that he "suspected the condition may have been due to a drug overdose." (*Id.* at ¶ 66.) He did not tell the nurse that he had slammed Mr. Scott's head onto the pavement.

Mr. Scott died at CAMC on July 24, 2022, at 3:33 p.m. His injuries included an epidural hematoma and basilar skull fractures.

The Plaintiff alleges that there are prior incidents of excessive use of force by officers with the Dunbar Police Department, including Officer Mason. He lists prior lawsuits against the City of Dunbar that he alleges put the Department on notice that officers were using excessive force against civilians. The Plaintiff also alleges that the Dunbar Police Department recently "changed their use of force policy to allow further escalation and to include striking of a subject's head." (*Id.* at ¶ 75.)

The Complaint contains the following causes of action: Count 1 – Excessive Force in Violation of the Laws and Constitutions of West Virginia and the United States, as to Defendants Winters and Mason; Count 2 – Deprivation of Medical Care, Deliberate Indifference in Violation

5

of 42 U.S.C. §1983 and Clearly Established Laws, as to Defendants Winters and Mason; Count 3 – Reckless Conduct in Violation of Clearly Established Laws, as to the City of Dunbar; Count 4 – Deprivation of Rights in Violation of 42 U.S.C. § 1983, as to all Defendants; Count 5 – Assault and Battery, as to Defendant Winters; Count VI – Civil Conspiracy, as to Defendants Winters and Mason; and Count VII – Punitive Damages.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual

inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

**DISCUSSION**

    A.  *City of Dunbar*

The City of Dunbar argues that it is entitled to statutory immunity under West Virginia law. It contends that the state law assault and battery claims cannot proceed against the City

because they are premised on intentional acts for which it is immune. It further argues that the allegations in the complaint are not sufficient to state a *Monell* claim for municipal liability because the allegations do not establish a causal connection between the Police Department's written policies and the alleged constitutional deprivation, and the prior lawsuits are insufficient to establish a custom or practice. Because the written policy cited by the Plaintiff was enacted after Mr. Scott's death, the City of Dunbar argues that it cannot plausibly have caused Mr. Scott's injuries. In addition, it contends that there are no factual allegations to support any claim for negligent hiring, training, or supervision. The City of Dunbar also asserts that it is immune from punitive damages. Both Defendants argue that a claim for excessive force under the West Virginia constitution cannot proceed because Article III, Section 6, does not contain a private cause of action.

In response, the Plaintiff notes that the assault and battery claim names only Officer Winters, and so the motion to dismiss that claim as to the City of Dunbar is moot. The Plaintiff further withdraws the § 1983 claim contained in Count IV and the punitive damages claim contained in Count VII as to the City of Dunbar. The Plaintiff argues that the complaint adequately states a *Monell* claim,[2] citing previous actions and complaints for excessive force

---

[2] The Court notes that the Defendant moved to dismiss claims without specifying the associated counts of the complaint, and the Plaintiff's response further confuses which claims are associated with which count. Count III is titled "Reckless Conduct in Violation of Clearly Established Laws," and is brought as to the City of Dunbar. It contains allegations regarding the City of Dunbar's failure to train, supervise, control, and discipline officers and its tacit approval of unconstitutional conduct. Count IV is entitled "Deprivation of Rights in Violation of 42 U.S.C. § 1983," and is alleged against all of the Defendants. It contains allegations regarding the City of Dunbar's customs and policies, as well as its knowledge of a pattern of use of excessive force by officers. The Plaintiff indicates that he is withdrawing the § 1983 claim in Count IV as to the City of Dunbar but argues that he sufficiently stated a *Monell* claim against the City—which appears to be contained in Count IV. The Plaintiff then "clarifies" that Count II of the complaint is a *Monell* claim against the City of Dunbar. Count II is entitled "Deprivation of Medical Care – Deliberate Indifference in Violation of 42 U.S.C. §1983 and Clearly Established Laws," and named Defendants Winters and Mason. For purposes of the motion to dismiss, the Court will address the causes of actions clearly set forth and briefed by the parties, including a *Monell* claim against the City of Dunbar. It is unclear whether Count III is a *Monell* claim or a state law claim for negligent hiring, retention, training, and/or supervision. Because the parties'

involving these and other officers, the subsequent adoption of policies approving uses of force similar to that which caused Mr. Scott's death, and failure to train officers to protect constitutional rights and to provide necessary medical care. He contends that the City of Dunbar maintains a policy and custom of encouraging its officers to use excessive force. He asserts that, following multiple complaints and lawsuits, the City of Dunbar did not take action to retrain officers or provide increased supervision, but instead approved a policy permitting escalating use of force, including striking a subject's head.

42 U.S.C. § 1983 states that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Although a state's political subdivisions are considered "persons" amenable to suit under § 1983, a local government cannot be sued for injuries caused by its employees or agents unless it is the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" that causes the injury. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "[A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). "Where a plaintiff claims that

---

briefing focused only on the standards applicable to *Monell* claims, the Court limited its analysis to that issue. For clarity as the case proceeds, the Court will require the Plaintiff to file an amended complaint that lists the counts with which he intends to proceed, with each count setting forth a clear legal cause of action and the Defendant(s) allegedly liable for that legal claim.

the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* at 405.

The Plaintiff alleges that the City of Dunbar "tolerated and implicitly approved of prior acts of misconduct by its officers, including the Defendants Winters and Mason; did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct; and failed to properly investigate complaints against said officers or discipline them accordingly." (Compl. at ¶ 103.) He lists two previous lawsuits alleging excessive force against the City of Dunbar and individual police officers it employs, one with claims against Officer Mason. He alleges additional court cases involving excessive force, as well as previous complaints from citizens, none of which the City of Dunbar properly investigated and none of which prompted any discipline or retraining. He alleges that the City of Dunbar implemented customs, policies, and procedures condoning, encouraging, and demonstrating indifference to the use of excessive force by officers. Furthermore, the Complaint alleges that Officer Mason informed jail staff that the city attorney and a municipal judge confirmed that Officer Winters could leave Mr. Scott at the jail despite his injuries, suggesting that he had discussed the situation with those individuals.

The Court finds those allegations sufficient to state a *Monell* claim. Taken as true, the Plaintiff has alleged that the City of Dunbar was aware that Officers Mason and Winters, as well as other officers, used excessive force in the past, and routinely did nothing when it learned that its officers violated individuals' constitutional rights by using excessive force. Although the written policy cited by the Plaintiff allowing escalation and blows to a suspect's head was enacted

10

after this incident, taken together with the other factual allegations, a jury could infer that the adoption of the written policy merely formalized a pre-existing unwritten policy permitting excessive force, including forms of force such as blows to the head likely to cause more severe injuries. In short, the Plaintiff's allegations, if proven, would permit a finding that the City of Dunbar's actions in routinely permitting officers to use excessive force resulted in Officer Winters' use of excessive force in his encounter with Mr. Scott, and thereby caused Mr. Scott's death. Therefore, the motion to dismiss the *Monell* claim should be denied.

The motion to dismiss the assault and battery claim is moot, as the complaint names only Officer Winters in that claim. The motion to dismiss any punitive damages claim as to the City of Dunbar will be granted, without objection from the Plaintiff. The motion to dismiss any claim for excessive force under the West Virginia constitution will be granted, as the Plaintiff concedes that the West Virginia Supreme Court has found that Article III, Section 6, of the state Constitution does not contain a private cause of action.

### B. *Defendant Mason*

Officer Mason argues that the Fourth Amendment excessive force claim against him fails because the complaint does not allege that he ever used force against Mr. Scott. The Plaintiff contends that the facts are sufficient to state a claim. He argues that "Defendant Mason acted in concert with Defendant Winters and engaged in a coordinated and unconstitutional pattern of concealing the excessive force used by Winters, ignoring the injuries sustained by Mr. Scott and depriving him of his rights and need for medical care, and Mr. Scott's need to be protected from the illegal acts of Defendant Winters, among other actions as pled by Plaintiff in his Complaint." (Pl.'s Resp. at 14–15.) He contends that Officer Mason is liable for excessive force under a

bystander liability theory. In response, Officer Mason notes that the facts cited by the Plaintiff may support the deliberate indifference claim, which he did not move to dismiss, but cannot be the basis of an excessive force claim. Likewise, he argues that bystander liability is a separate claim that was not pled in the complaint, rather than a theory that may be used to prove an excessive force claim.

In his reply brief, Officer Mason moves to dismiss the Civil Conspiracy claim, contending that a § 1983 claim based on denial of medical care does not survive the decedent's death. Because this issue was raised for the first time in the reply brief, the Court declines the opportunity to address it.

The complaint contains no factual allegations that Officer Mason used physical force against Mr. Scott. The Plaintiff indicates that he intends to proceed on a claim of bystander liability. "To succeed on a theory of bystander liability, a plaintiff must demonstrate that a law-enforcement officer (1) knew that a fellow officer was violating an individual's constitutional rights; (2) had a reasonable opportunity to prevent the harm; and (3) chose not to act." *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 416–17 (4th Cir. 2014) (internal punctuation and quotation marks omitted). In *Stevenson*, the Fourth Circuit found that language in a § 1983 count alleging that certain officers "allowed to be committed" constitutional violations was sufficient to state a bystander liability claim where the complaint alleged that those officers were present at the scene. The language in Count One of Mr. Scott's complaint, however, does not contain similar allegations that Officer Mason allowed Officer Winters to use excessive force and failed to intervene. To the extent the Plaintiff intended to assert a bystander liability claim, the legal claims in the complaint do not adequately place Defendant Mason on notice of such a claim. Therefore,

the Court finds that the motion to dismiss the excessive force claim against Officer Mason should be granted. Should the Plaintiff wish to proceed with a bystander liability claim, he may plead such a claim with greater clarity in his amended complaint.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Defendants', City of Dunbar and Adam Mason, Motion to Dismiss* (Document 13) be **GRANTED** as to any claim for punitive damages against the City of Dunbar, the claim for excessive force under the West Virginia constitution, and the claim for excessive force as to Defendant Mason, and **DENIED** as to the *Monell* claim against the City of Dunbar.

The Court further **ORDERS** that the Plaintiff file an amended complaint, setting forth each claim in a separate count that clearly describes the legal cause of action and the Defendant(s) to whom each count is applicable, no later than **February 21, 2023**.[3]

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: February 3, 2023

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

---

[3] This deadline remains applicable despite the stay of discovery, and briefing on any motions to dismiss shall likewise proceed despite the stay.